IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MANUEL L. PIZANA, IV | § | Civil Action No. 4:20-cv-2274 |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | Jury Trial Demanded |
| | § | |
| CITY OF HOUSTON and | § | |
| MATTHEW SINGER | § | |
| *Defendants.* | § | |

**PLAINTIFF MANUEL L. PIZANA, IV'S ORIGINAL COMPLAINT**

To the Honorable Judge of Said Court:

Plaintiff Manuel L. Pizana, IV files his Original Complaint against Defendants City of Houston (*COH*) and Matthew Singer (*Singer*) and for cause of action would show as follows:

## A.    INTRODUCTION

1.    This case arises from a police shooting of an 18-year-old committed by Defendant City of Houston police officer Matthew Singer. Singer shot Manuel L. Pizana, IV (*Manuel* or *Pizana*) in the back as Pizana ran away from police and toward his home. Singer's use of deadly force was an unconstitutional use of excessive force. To that end, this case is also about Defendant City of Houston's policies which also caused Pizana's severe and permanent injuries. Accordingly, this action is brought for violations of the United States Constitution and applicable state and federal law. The Defendants violated Mr. Pizana's rights under the Fourth Amendment of the United States Constitution by using excessive force when attempting to arrest, seize, or make an investigatory stop of Mr. Pizana. And so Pizana brings this action for compensatory damages under 42 U.S.C. § 1983 because Defendants jointly and severally deprived Pizana of his constitutionally guaranteed and federally protected right to be free from unreasonable seizure and unreasonable and excessive

force. U.S. Const. amend. IV. Pizana also brings this suit for personal injuries actionable under Texas law for harm suffered by him as a result of the unreasonable search and seizure and personal injuries he suffered.

2.   Plaintiff Manuel L. Pizana, IV (*Manuel* or *Pizana*) is the victim of a COH and Singer's shooting. According to COH's publicly available database, Manuel was the fourth person shot and either killed or wounded by COH police officers in 2018.[1] He brings this action pursuant to 42 U.S.C. §§ 1983, 1988.

3.   As a direct result of the policies, practices, customs, usages, and procedures of the City of Houston, Manuel L. Pizana, IV was deprived of his constitutional rights to be free from unreasonable searches and seizures and excessive force. These rights are guaranteed by the Fourth Amendment and applied to the several states through the incorporation of the Fourth Amendment into the Fourteenth Amendment of the United States Constitution. Wolf v. Colorado, 338 U.S. 25, 28 (1949).

4.   Defendant Matthew Singer, a City of Houston police officer acting in the course and scope of his employment with the City, and acting under color of state law, unjustifiably shot Pizana in the back. Singer shot Pizana under circumstances where no reasonable police officer would have done so. Under long-established law on excessive force, a reasonable officer would have had fair notice that Manuel had a clearly established right to be free from the type of excessive force that was used against him. And so Matthew Singer is not entitled to qualified immunity for these actions.

### B.        JURISDICTION AND VENUE

5.   This Honorable Court has federal-question jurisdiction This Honorable Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because the matter arises under the Constitution,

---

[1] *See* https://www.houstontx.gov/police/ois/2018.htm (last visited June 9, 2020).

laws, or treaties of the United States; specifically, this claim seeks rights and remedies provided by the United States Constitution and 42 U.S.C. §§ 1983, 1988. *See also* 28 U.S.C. § 1331(a)(3).

6.   Supplemental jurisdiction over the pendant state-law claims is proper under 28 U.S.C. § 1367(a) because the state-law claims form a part of the same case or controversy under Article III of the United States Constitution.

7.   Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a)(1) and 1391(c) because all defendants reside in Texas and one or more defendants reside in this judicial district and, more specifically, this division of this judicial district. Further, as provided under 28 U.S.C. 1391(b)(2), a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

### C.   PARTIES

8.   Plaintiff MANUEL L. PIZANA, IV is a resident of Texas. Plaintiff resides in Houston, Harris County, Texas. Plaintiff was a permanent resident of the State of Texas when the events or omissions giving rise to this lawsuit occurred. Plaintiff was the victim of this police shooting. The events giving rise to this lawsuit culminated with the shooting and consequent severe and permanent injuries of MANUEL L. PIZANA, IV. Accordingly, Pizana brings this suit in his individual capacity as the victim of this unconstitutional police action.

9.   Defendant CITY OF HOUSTON is a municipal corporation operating according to the Constitution and the laws of Texas. It is located within the United States Southern District of Texas. The City of Houston may be served with process by serving the City Secretary, 900 Bagby, Houston, Texas 77002.

10. Defendant MATTHEW SINGER is a resident of Texas. Defendant Singer may be served in

person at 1200 Travis Street, Houston, Texas 77002 or wherever he may be found.

### D.     FACTS

11.  On or about July 15, 2018, uniformed City of Houston Police Officer Matthew Singer shot Manuel L. Pizana, IV (at the time, 18 years old) in the back as Pizana ran away from Singer and toward his (Pizana's) home. The shot fired by Singer severely and permanently injured Manuel.

12.  This shooting incident occurred in the morning hours of Sunday, July 15, 2018.

13.  Manuel Pizana spent the night of July 14, at the home of a friend, a few blocks north from where he lived in the 600 block of Duff Lane, Houston, Texas.

14.  On the morning of July 15, 2018, shortly after Manuel awoke at the friend's house, he decided to return to his home. He put in his earbuds, began listening to music, and started to walk the short distance back to his home. He walked south on Helmers Street toward Duff Street.

15.  As he approached his home, police cars pulled up behind him and Manuel instinctively ran back to his home. Prior to this date, Manuel had never been arrested and had no criminal record.

16.  As Manuel approached the gateway entry of his driveway, HPD Officer Matthew Singer shot at Manuel.

17.  Upon information and belief, Singer fired more than one shot at Manuel.

18.  One of Singer's shots struck Manuel. Singer's bullet entered the lower left side of Manuel's back and exited the front of Manuel's body.

19.  Although reports indicate Manuel was armed with a handgun, Manuel was unarmed when Singer shot him.

20.  Manuel was taken to Memorial Hermann Hospital where he was treated for his injuries.

21.  Singer's shooting of Manuel caused sufficient damage to Manuel's gall bladder that his

treating health care providers had to remove Manuel's gall bladder; Singer's shooting caused Manuel to suffer other internal injuries.

22. As of July 15, 2018, City of Houston policy mandated that HPD officer-involved shootings were to be investigated by, among others, HPD Homicide Division.

23. On July 15, 2018, the same day Manuel was shot, HPD Detective (Homicide Division) M. Rodriguez was assigned the investigation of Singer's shooting.

24. Later on July 15, 2018, Officer Rodriguez served as the complainant for a single charge of felony aggravated robbery that was filed against Manuel.

25. On July 16, 2018, COH's HPD Public Affairs Division issued a press release titled *Investigation Into Fatal Crash At 2900 Eastex Freeway*. COH"s press release was not about any fatal crash on Eastex Freeway. Instead, it described Singer's shooting of Pizana and cited reporting from Rodriguez and three other HPD Homicide officers.

26. On July 17, 2018, a second (identical) case of felony aggravated robbery was filed against Manuel, who was still undergoing treatment and care for his injuries at Memorial Hermann. Officer Rodriguez (who had been assigned the investigation of Singer's shooting) again served as the complainant against Manuel.

27. The first (July 15) felony charge against Manuel was later dropped in favor of the second (July 17).

28. On July 27, 2018, Manuel was simultaneously discharged from Memorial Hermann and arrested; and he was then transferred to Harris County jail.

29. On May 24, 2019, the final remaining charge against Manuel from any event of July 15, 2018 was dismissed.

30. This incident was simply the latest in a long line of shooting cases where an HPD officer unjustifiably shot a person and the City's investigation was fixed so as to justify the shooting after the fact. The City's intentional failure to adequately investigate its police officers following shootings created a de facto deadly force policy that allowed individual HPD officers to use deadly force at their discretion. Put another way, COH's unofficial deadly force policy gave its officers an unqualified license to kill. Pursuant to that unofficial policy, Singer shot in the back an 18-year-old kid with no criminal record who was running away from him and toward his home.

31. The factual scenario under which Singer shot Pizana is nearly identical to the *Tennessee v. Garner* facts, under which the U.S. Supreme Court held that a police officer shooting a fleeing unarmed man in the back was an unconstitutional seizure of a suspect under the Fourth Amendment.

32. Between March 2005 and March 2010, the City of Houston failed to find a single shooting of another person by an HPD officer to be unjustified.

33. Likewise, the City's manufactured "perfect" record of zero unjustified shootings of other humans continued through October 2012 – when HPD's Jason Rosemon shot and killed Kenny Releford.

34. The City's self-examined "perfect" record continued still through August 2015, with the tasering and shooting of Alan Pean, a naked and unarmed man, in his own hospital room.

35. The City of Houston found HPD officer Oscar Ortega's shooting of Alan Pean to be justified.

36. Continuing from August 2015 through Singer's July 2018 shooting of Manuel Pizana, the City continued to find every intentional, i.e. non-accidental, shooting perpetrated by its HPD

officers to be justified.

37. These shooting injuries and deaths, along with all others perpetrated by HPD between 2005 and 2018, were uniformly whitewashed by HPD's internal affairs and homicide divisions.

38. Between March 2005 and July 2018 (a period of more than 13 years) no HPD shooting of another human was determined by the City to be unjustified.

39. This resulting de facto policy gave HPD officers a license to shoot with impunity.

### E.   CAUSES OF ACTION

**PLAINTIFF'S CIVIL-RIGHTS CLAIMS**

40. Plaintiff incorporates all preceding paragraphs by reference.

41. The Ku Klux Klan Act of 1871 and its revisions, partially codified as 42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

42. Plaintiff alleges that Defendants, jointly, severally, or both, deprived him of his Fourth Amendment rights as incorporated and applied to the states through the Fourteenth Amendment.

43. Defendants violated Plaintiff's rights in the following ways:

a.   By using excessive and deadly force in the course of Officer Singer's attempt to seize, arrest, search, or make an investigatory stop of Pizana. This excessive force was a violation of the  Fourth Amendment and its standard of reasonableness. Officer Singer shot and injured Manuel unlawfully. Manuel's injuries resulted directly from a use of force that was clearly excessive to the need, and was objectively unreasonable;

b.   By failing to provide proper supervision to prevent such incidents of

excessive force;

c.   By failing to provide proper training to prevent such incidents of excessive force; and

d.   By adopting polices that caused Pizana's injuries in violation of his Fourth Amendment rights.

44. Defendants' violations of the Constitutional rights of Plaintiff resulted in and were a direct cause of his injuries.

### (A) PLAINTIFF'S FIRST CLAIM: 42 U.S.C. § 1983—

### PEACE-OFFICER        LIABILITY:        Unreasonable,        Unjustified,        and Excessive Use of Deadly Force

45. Plaintiff incorporates all preceding paragraphs by reference.

46. Plaintiff brings a claim against Officer Singer, individually pursuant to 42 U.S.C. § 1983. With his § 1983 claim, Plaintiff seeks punitive damages against Officer Singer for unreasonable, unjustified, and excessive use of deadly force.

47. Force is excessive, and thus violates the Fourth Amendment, if it is not reasonable in light of the circumstances facing the officer. *See Graham v. Connor*, 490 U.S. 386, 398 (1989).

48. At all times material to this action, Officer Singer was acting under color of state law. He was an agent and employee of the City of Houston and clothed in the authority of state law. He was wearing his official police-department uniform and was acting in the course and scope of his employment at the time he shot and injured Manuel. That is, when he shot Manuel, he was acting in his official capacity or exercising responsibility pursuant to state law.

49. At the time of the incident, Officer Singer had no reason to believe that Manuel was either armed or dangerous. In fact, Manuel was running away from Singer; and Singer shot him in the back.

50. Officer Singer did not have a reasonable fear of imminent bodily harm when he shot and injured Manuel nor did Officer Singer have a reasonable belief that any other person was in danger of imminent bodily harm from Manuel. Shooting and injuring Manuel was unwarranted and illegal under these circumstances.

51. When Singer shot and injured Manuel, no factors existed which would have granted license to Officer Singer to apply deadly force.

52. Consequently, by using objectively unreasonable deadly force while acting under color of state law, Officer Singer violated Manuel's rights under the Fourth Amendment to the United States Constitution and caused the injuries for which he now sues.

**(B)  PLAINTIFF'S SECOND CLAIM: 42 U.S.C. § 1983 – MUNICIPAL LIABILITY**

**a. The City of Houston's Policies Caused Constitutional Injury to Manuel Pizana, IV.**

53. Plaintiff incorporates all preceding paragraphs by reference.

54. Officer Singer's excessive force against Manuel implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated the City's official policy makers.

55. And so the City's policy statements, ordinances, regulations, or decisions that were adopted and promulgated by the City's official policy makers caused the constitutional violation to Manuel and Manuel's injuries.

56. The City is liable for the constitutional torts of Officer Singer because the City sanctions the following nonexclusive list of customs, practices, and policies:

   a.   Using excessive, and often deadly force to carry out otherwise routine arrests, searches, and seizures;

   b.   Using deadly force when such force is neither necessary nor permitted by

law;

c.   Using deadly force too readily;

d.   Using deadly force on citizens who do not possess weapons;

e.   Ignoring the serious need for training and supervision of officers with respect to the use of force — new or additional training and supervision that, in light of the duties assigned to the City's officers and their previous wrongful conduct, was so obviously needed that not providing it amounted to deliberate indifference;

f.   Adopting training regimes unsuited to prepare officers to adequately reach nonviolent solutions to nonviolent confrontations;

g.   Failing to properly investigate officers who use deadly force;

h.   Failing to discipline officers who use excessive force;

i.   Training officers to use deadly force before it is legally justified;

j.   Adopting a hierarchy of responses that allows officers to use deadly force before it is necessary or legally justifiable;

k.   Using procedures to investigate complaints of official misconduct designed to prevent detecting official misconduct;

l.   Establishing a code of silence, where officers are discouraged from pointing out the wrongful conduct of other officers;

m.  Failing to adequately train officers regarding the availability of alternative means of detaining suspects, other than the use of force or deadly force;

n.   Failing to discharge officers who have shown a pattern or practice of using excessive force;

o.   Failing to identify those officers likely to commit future violations of the use-of-force policy;

p.   Promoting officers accused of misconduct at a higher rate than officers not so accused;

q.  Instituting policies that prevent the City, County, State, and Federal Government from adequately investigating officer-involved shootings;

r.   Adopting a practice whereby officers who are unfit for peace-officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions;

s.  Using deadly force too impetuously. That is, using deadly force when it would be more prudent to wait for backup to arrive and handle the situation in a safer, more controlled manner; and

t.   Failing to train officers to use their stun guns or Tasers rather than their handguns when dealing with an unarmed suspect;

u.  Dispatching rookie or otherwise inexperienced officers alone and without backup to situations that the officers don't have the experience to safely handle.

**b.    The City of Houston has a Pattern and Practice of Authorizing and Allowing Excessive Force.**

57.  Plaintiff incorporates all preceding paragraphs by reference.

58.  The City of Houston is liable under 42 U.S.C. § 1983 for exonerating officers who use excessive force. The City has a general official policy, pattern, practice, custom or usage of not disciplining its police officers for their excessive force with firearms, thereby sanctioning such actions by its police officers. By deciding not to discipline its police officers, the City has created a de facto policy or policy by implication of overlooking constitutional violations and a culture, custom, and usage of reckless, dangerous policing. This caused or was the moving force behind the shooting of Manuel Pizana.

59.  The City's failure to supervise its police officers, its refusal to take disciplinary action against them for using excessive force with firearms, and/or its pattern and practice of helping to conceal the use of excessive force by its officers created a sense of impunity and a culture of reckless, dangerous policing among HPD's officers that caused Pizana's injuries. Officer Singer was too

reckless and dangerous about the use of force — that is he didn't fear reprisal from the City if he used excessive force, and so he used force excessive to what any reasonable officer in his position would have used when he shot Manuel.

60. Municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality. Even absent an officially adopted policy, the practice may be so well entrenched that it fairly represents an official municipal policy. *See Bd. of County Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

61. Here, the City's formal and informal actions in overlooking, hiding, and tacitly encouraging police misconduct through other officers, the Internal Affairs Division, the Houston Police Chiefs, the Homicide Division, as well as a line of mayors, reflect an official policy, practice, custom, usage, and procedure — a policy which authorized and allowed the use of excessive force with firearms that violated the constitutional rights of Manuel and caused his injuries.

62. This policy is evident in the fact that between 2005 and 2018, HPD officers shot hundreds of people.

63. And the Internal Affairs Division never once determined one of these 2005–2018 shootings of a human by an HPD officer to be unjustified. Put another way, none of the intentional shootings by Houston Police Department officers that caused injury or death to another person were found unjustified for more than 13 years.

64. The City conducts two investigations of every shooting perpetrated by one of its officers. One investigation is conducted by HPD's Homicide Division; the other is conducted by HPD's Internal Affairs Division (IAD).

65. The IAD investigation of HPD shootings reaches one of three conclusions: a shooting will

be determined by IAD to be accidental, justified, or unjustified. The City has a policy or custom of finding all intentional (i.e. non-accidental) officer-involved shootings justified.

66.  No intentional shooting was ever determined to be unjusti- fied during the tenure of former Houston Police Chief Charles McClelland.  The trend continued after Chief McClelland.

67.  Like the others, the City determined Singer's intentional shooting of Manuel to be justified. The City's unjustified classification – when it comes to those shootings which kill or injure others -- exists only as window dressing. This policy or custom allows the City's police to shoot with impunity. This policy or custom of absolving its officers for wrongful shootings is unconstitutional. In effect, the City has granted its police officers a license to kill. This "license to kill" policy or custom has existed for several years and was in force, effect, and practice at the time of Singer's shooting of Manuel Pizana.

68.  The City's policy of defending all police officers in all circumstances regarding civil liability for the intentional use-of-excessive- force through firearms requires the City to actively defend unconstitutional practices by its police. It also requires the City to adopt and implement a policy or custom of covering up unlawful shootings. This policy or custom is implemented by all rankings of HPD officers, including Homicide Detectives, Internal Affairs investigators and officers, Assistant Chiefs of Police, and the Chief of Police and Acting Chief of Police.

69.  The City's absolute absolution of its officers for their excessive force through firearms also amounts to a policy or custom of inadequate training and supervision.

70.  The City also has a policy or custom of inadequate training regarding the use of deadly force. It trains its officers that they may use deadly force even under circumstances forbidden by the United States Constitution.

71.  The City is also liable for those additional policies or customs that discovery will show exist.

72.  The City's policies or customs of inadequate training and supervision amount to deliberate indifference on the part of the City and its decision makers with regard to the rights of persons with whom the City's police officers may come in contact.

73.  The City's policies and customs of allowing its officers to shoot with impunity, finding all intentional officer-involved shootings to be justified, covering up wrongful shootings, and failing to train and supervise its officers on the use of deadly force were promulgated and adopted by the City's policy makers, including the Chief of Police.

74.  These polices and customs were the cause or moving force behind Officer Singer's shooting of Manuel.

### c.  Ratification by the City of Houston

75.  The City ratified Officer Singer's unconstitutional use of force by perpetrating sham investigations of Officer Singer's shooting of Manuel Pizana. Both the Homicide Division investigation and Internal Affairs investigation were designed to justify Defendant Singer's actions and shift the blame for Singer's use of deadly force to Manuel.

76.  Its findings regarding Singer's shooting of Pizana were no different than all that came before it. HPD determined the shooting justified and that determination was preordained from within HPD. Further, other policies adopted by the City additionally allowed the use of excessive force and caused Pizana's injuries. Consequently, the City is liable for harm caused to others, such as Plaintiff, as a result of its policies, practices, customs, usages, and procedures.

### d.  The City's Policy and Custom of Dangerous Recklessness.

77.  Plaintiff incorporates all preceding paragraphs by reference.

78. The subsequent acceptance of dangerous recklessness by the policy maker tends shows the policy maker's disposition and policy.

79. That is, the City of Houston's de facto policy of dangerous and reckless policing is shown by the fact that the City accepted Officer Singer's use of excessive force.

80. After the shooting of Pizana, the City took no disciplinary action against Officer Singer.

81. But the City did more than simply fail to punish Singer. It concealed Singer's wrongdoing.

82. The City concealed Singer's use of excessive force — whitewashing the shooting —- by doing many things, including but not limited to the following: fabricating exculpatory evidence, ignoring inculpatory evidence, destroying inculpatory evidence, not analyzing objective evidence gathered at the crime scene, and not analyzing whether Singer followed proper police procedure. The City's actions following Singer's shooting of Pizana ratified Singer's wrongful, illegal, and unconstitutional conduct.

83. The subsequent acceptance of Singer's dangerous and reckless policing — as shown by its refusal to punish him and its efforts to conceal his and its wrongful conduct — proves that reckless, dangerous policing was the preexisting disposition and policy of the city.

84. This preexisting disposition was the cause of and moving force behind Officer Singer's use of excessive force on Manuel and Manuel's injuries.

### F.  DAMAGES

85. Plaintiff incorporates all preceding paragraphs by reference.

86. In addition to the damages mentioned in the above paragraphs sustained as a direct and proximate result of the intentional and unlawful conduct of Defendants, Plaintiff has suffered and in reasonable probability will continue to suffer damages.

87. Manuel Pizana, IV seeks damages within the jurisdictional limits of this Court. He seeks all damages to which he is entitled by law.

88. These damages — which were caused by the Defendants — include all general, or direct, damages. These damages also include all special, or consequential, damages. He seeks all damages to which he is entitled under the law against each and every named defendant. The damages he seeks include but are not limited to:

       a. Past and future pain and suffering

       b. Past and future mental anguish

       c. Past and future physical disfigurement

       d. Past and future physical impairment

       e. Medical care expenses, past and future

       f. Loss of past and future earning capacity

       g. Past and future loss of consortium

       h. Past and future loss of household services

       i. Exemplary damages

       j. Attorney's fees

       k. Prejudgment interest; and

       l. Costs of court.

## G.    CONDITIONS PRECEDENT

89. All conditions precedent to Plaintiff 's claims for relief have been performed or have occurred.

## H. ATTORNEY'S FEES

90. The Civil Rights Attorney's Fee Award Act of 1976 entitles Plaintiff to recover his attorney's

fees and costs. 42 U.S.C. § 1988. Plaintiff thereby requests that the Court and jury award his attorney's fees and expenses.

## I.  JURY DEMAND

91.  Plaintiff respectfully demands a jury trial pursuant to FED. R. CIV. P. 38(b).

## J.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer herein, and that Plaintiff have judgment against Defendants, jointly and severally, for actual damages above the jurisdictional minimum of the Court, exemplary damages against all individual defendants, pre- and post-judgment interest, costs of court, attorney's fees and expenses, and all other and further relief to which Plaintiff is justly entitled, both at law and in equity.

Respectfully submitted,

MELUGIN LAW FIRM, PLLC

By:      /s/ Joe Melugin
Joseph C. ("Joe") Melugin
Texas State Bar No. 24054038
Fed. Bar No. 876851
2019 Washington Avenue
Houston, Texas   77007
(713) 299-7506 – Telephone
(713) 583-3601 – Facsimile
joe@meluginlaw.com – E-mail

ATTORNEY FOR PLAINTIFF
MANUEL PIZANA, IV

DATED:       June 29, 2020